UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| MELODY JOY BIRD, | Case No. 20-11919 |
| Plaintiff, | Thomas L. Ludington |
| v. | United States District Judge |
| COMMISSIONER OF SOCIAL SECURITY, | Curtis Ivy, Jr. |
| | United States Magistrate Judge |
| Defendant. | |
| _____/ | |

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 17, 18)**

Plaintiff Melody Joy Bird brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits and Supplemental Security Income under the Social Security Act. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's motion for summary judgment (ECF No. 17), the Commissioner's cross-motion for summary judgment (ECF No. 18), Plaintiff's reply (ECF No. 19) and the administrative record (ECF No.13).

For the reasons below, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (ECF No. 17), **GRANT** Defendant's

motion for summary judgment (ECF No. 18), and **AFFIRM** the Commissioner's decision.

I. **DISCUSSION**

A. **Background and Administrative History**

Plaintiff alleges her disability began on July 18, 2017, at the age of 32. (ECF No. 13, PageID.72). She applied for disability insurance benefits and supplemental security income on October 6, 2017. (*Id.*). In her disability report, she listed several ailments which impaired her ability to work. The ailments included: bipolar disorder, anxiety, and post-traumatic stress disorder ("PTSD"). (*Id.* at PageID.265). Her application was denied on March 28, 2018. (*Id.* at PageID.72).

Following the denial, Plaintiff requested a hearing by an Administrative Law Judge ("ALJ"). (*Id.* at PageID.178-79). On June 25, 2019, ALJ Adam Dale held a hearing, at which Plaintiff and a vocational expert testified. (*Id.* at PageID.97-123). On July 17, 2019, the ALJ issued an opinion, which determined Plaintiff was not disabled within the meaning of the Social Security Act. (*Id.* at 72-81). Plaintiff later submitted a request for review of the hearing decision. (*Id.* at PageID.228). On May 12, 2020, the Appeals Council denied Plaintiff's request for review. (*Id.* at PageID.63-67). Thus, the ALJ's decision became the Commissioner's final decision.

Plaintiff timely commenced the instant action on July 15, 2020.

**B.     Plaintiff's Medical History**

The issues on appeal relate only to Plaintiff's mental impairments. The record contains the following pertinent medical history, most of which occurred before the alleged onset date, July 18, 2017.

Plaintiff presented to her primary care physicians with complaints of anxiety and panic attacks, often worsening, with records beginning December 2016. (ECF No. 13, PageID.323, 325, 331, 375, 377). During this time, she was taking anxiety medication, such as Klonopin. On December 23, 2016, Plaintiff presented to the emergency department at MidMichigan Medical Center with complaints of panic attacks. She stated she had multiple stressors in her life concerning her children. (ECF No. 13, PageID.331). She stated she needed to leave work that day due to her panic attacks. Although Plaintiff presented to the emergency department with an anxious mood, her mental status examination was normal—suggesting she was alert and oriented. (*Id.* at PageID.333). She was prescribed Alprazolam and discharged the same day. (*Id.* at PageID.334). She did not present to the hospital again with complaints of panic attacks or anxiety.

On January 9, 2017, on follow-up for anxiety, Plaintiff's mental status examination revealed a euthymic (normal) mood. (*Id.* at PageID.376). On February 20, 2017, her primary care physician found she was oriented to time,

3

place, and person; had a dysthymic mood; showed guilt, fear, and anxiety; was crying; but she had normal affect, thought process, and thought content. (*Id.* at PageID.375).

Plaintiff underwent a behavioral health assessment at MidMichigan Medical Center on April 24, 2017. She reported a history of emotional and physical abuse, as well as stress, in part, related to her daughter's cancer diagnosis. She stated she had been experiencing panic attacks, heart palpitations, shortness of breath, and an out of body experience. She was diagnosed with major depressive disorder, PTSD, and generalized anxiety disorder. The plan was for Plaintiff to return to the assessing therapist for ongoing therapy. (*Id.* at PageID.327-30). That said, as there are no such records, it does not appear Plaintiff attended any therapy.

During April and May 2017, Plaintiff returned to her treating physician with complaints of anxiety. Mental status examinations revealed linear thought process, good memory and attention, and good judgment. (*Id.* at PageID.322, 354, 356). On May 31, 2017, her Klonopin prescription was increased.[1] (*Id.* at PageID.356).

Plaintiff did not present again for any treatment until August 2018. This is the only medical record created during the relevant period (after Plaintiff's alleged

---

[1] Plaintiff discussed records from October 4, 2017. (ECF No. 17, PageID.394). The date of service for these records reflect May 31, 2017. The medical provider filed the records on October 4, 2017. There appear to be no treatment records for services rendered during October 2017.

4

onset date of July 18, 2017). Plaintiff presented to the emergency department on August 14, 2018 because of an alleged domestic incident at home. (*Id.* at PageID.357). The key purpose of this hospital visit appears to be related to assess physical injuries. Plaintiff's mental status was stable, her mood was anxious, her cognition and memory were normal, she was attentive, and she had normal judgment. (*Id.* at PageID.357, 361).

On March 23, 2018, a State agency reviewer (it is not clear if this individual is a medical professional or a single decision maker) issued a decision. After reviewing the available evidence, she concluded there was insufficient evidence to assess the paragraph B and C criteria for Listings 12.04, 12.06, and 12.15. (*Id.* at PageID.129). The paragraph B criteria are (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintain pace; and (4) adapting or managing oneself.

C. **The Administrative Decision**

Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the sequential evaluation process, the ALJ found Plaintiff had not engaged in substantial gainful activity since July 18, 2017, the alleged onset date. (ECF No. 13, PageID.74). At **Step 2**, the ALJ found Plaintiff had the following severe impairments: post-traumatic stress disorder, generalized anxiety disorder, panic disorder without agoraphobia, and major depressive disorder. (*Id.* at PageID.75-

5

76). At **Step 3**, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (*Id.* at PageID.76-77). **Between Steps 3 and 4** of the sequential process, the ALJ evaluated Plaintiff's residual functional capacity ("RFC")[2] and determined Plaintiff had the RFC: "to perform a full range of work at all exertional levels but with the following nonexertional limitations: she can perform simple and routine tasks as well as make simple work related decisions." (*Id.* at PageID.77). At **Step 4**, the ALJ determined Plaintiff was unable to perform any past relevant work. (*Id.* at PageID.79-80). At **Step 5**, considering Plaintiff's age, education, work experience, and RFC, the ALJ determined there were existing jobs in significant numbers within the national economy that Plaintiff could perform, such as machine feeder, cleaner, and packager. (*Id.* at PageID.80-81). The ALJ therefore concluded Plaintiff had not been under a disability, as defined in the Social Security Act, from July 18, 2017 through the date of the decision. (*Id.* PageID.81).

### D. Framework for Disability Determinations

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical

---

[2] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; (4) can return to past relevant work; and (5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §§ 404.1520, 416.920.[3] The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that there is work available in the national economy the claimant can perform. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) ("[D]uring the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five.") (citing *Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 148 (6th Cir. 1990)).

E. **Standard of Review**

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision

---

[3] Citations to the regulations or Social Security Rulings are to those effective on the date of the application for disability benefits or the ALJ's decision, where appropriate, unless otherwise indicated.

if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Even so, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would

have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

**F. Analysis**

Plaintiff's sole argument on appeal is the ALJ crafted an RFC that is not supported by the record or based on an opinion by a State agency examiner or mental health professional. (ECF No. 17, PageID.397). She argues functional limitations caused by mental impairments like her own are difficult to assess without opinion evidence. Without opinion evidence, Plaintiff argues the ALJ impermissibly relied on his own interpretation of raw medical data. (*Id.* at PageID.401). Plaintiff contends the ALJ should have acted to develop the record further, such as ordering a consultative examination or obtaining expert testimony. (*Id.* at PageID.402).

In response, the Commissioner argues: (1) the ALJ was not required to base the RFC on a medical opinion, (2) the regulations in effect at the time of Plaintiff's disability application did not require ALJ to develop the record, (3) the record as it

9

stands was sufficient for the ALJ to reach his RFC determination, and (4) Plaintiff waived her argument by declining to request a consultative examination and certifying the record did not require further development. (ECF No. 18).

Plaintiff's argument requires the Court to examine the intersection of her burden of proof through step four and the ALJ's duty to fully examine and develop the record. Plaintiff's insistence the ALJ had a duty to obtain a medical opinion is contrary to current Social Security regulations. While the ALJ has a duty to fully develop the record, *Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1051-1052 (6th Cir. 1983), the ALJ's specific obligations in soliciting information from medical sources have changed. When Plaintiff applied for disability benefits, it was in the agency's discretion whether to obtain a consultative examination. 20 C.F.R. §§ 404.1519a(a), 404.1520b(b)(2); 416.920b(2)(b) *see McBride v. Comm'r of Soc. Sec.*, 2017 WL 3393948, n. 4 (S.D. Ohio Aug. 7, 2017) ("The regulations as amended specify that recontacting a treating physician or other medical source is permissive, not mandatory."). Plaintiff did not directly address the current regulations. While an ALJ has discretion whether to order a consultative examination, the ALJ's RFC determination must, of course, be supported by substantial evidence.

Plaintiff is correct ALJs are unable to take raw medical data and extrapolate what a claimant can and cannot do. *Wyatt v. Comm'r of Soc. Sec.*, 2013 WL

4483074, at *16 (E.D. Mich. Aug. 19, 2013). This task often requires expert medical opinion evidence to help the ALJ formulate functional capacity restrictions. An ALJ should obtain a medical expert opinion when developing the RFC unless the "medical evidence shows relatively little physical impairment such that the ALJ can permissibly render a commonsense judgment about functional capacity[.]" *Gross v. Comm'r of Soc. Sec.*, 247 F. Supp. 3d 824, 828 (E.D. Mich. 2017) (citations omitted). There is no bright line rule that an RFC must be supported by a medical opinion. *See Charbonneau v. Comm'r of Soc. Sec.*, 2019 WL 960192, at *16-17 (E.D. Mich. Jan. 11, 2019), *report and recommendation adopted*, 2019 WL 952736 (E.D. Mich. Feb. 27, 2019). "[I]n order to make a decision on this issue, this Court may not uphold an ALJ's decision, even if there is enough evidence in the record to support it, if the decision fails to provide an accurate and logical bridge between the evidence and the result." *Gross*, 247 F. Supp. 3d at 829 (internal quotations omitted).

Although it may be a "rare case in which the ALJ can formulate a residual functional capacity assessment without relying, at least in part, on an assessment by a medical professional," *Williams v. Berryhill*, 2019 WL 1274821, at *3 (E.D. Mich. Mar. 20, 2019), this is one of those rare cases. To begin, Plaintiff's conditions—anxiety, PTSD, and depression—are not foreign to lay people. Further, like in *Williams*, Plaintiff's treatment for her conditions was not

11

sophisticated—she took medication during the disability period; there were no hospitalizations or therapy sessions. There is also no diagnostic testing in the record needing expert interpretation, such as an MRI or EMG.[4] The record contains treatment notes identifying Plaintiff's objective mental health symptoms. These were phrased in lay terms: she presented at times with an anxious or depressed mood; normal affect; normal thought process and thought content; good memory and attention; and good judgment. These mental status observations are not overly complex such that a lay person could not make a commonsense judgment about functional capacity with this information in hand.

In short, the record as a whole permitted the ALJ to assess Plaintiff's RFC. That assessment is supported by substantial evidence. The evidence establishes Plaintiff has mental health conditions, however, those conditions are not disabling. The ALJ discussed all the evidence, including Plaintiff's hospitalization for panic attacks before the disability period and the mental status examinations prior to and during the disability period, which the ALJ accurately characterized as "show[ing] no significant findings." (ECF No. 13, PageID.78-9). The ALJ noted the following:

> The claimant's mood was good or euthymic and her affect was full. She was in no acute distress. She was

---

[4] This is a fact that distinguishes this case from the cases on which Plaintiff relies, *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908 (N.D. Ohio 2008) and *Gross*, 247 F. Supp. 3d 824. There is no "raw medical data" in this record.

12

> alert and oriented. She was well related. She was well dressed and well groomed. She had good eye contact. She had normal speech. She had normal psychomotor. There was no paranoia. There were no hallucinations or delusions. Her cognition was normal. She was attentive. Her thought process was not impaired. Her thought content was not impaired. She had a linea[r] thought process and good memory. She had good attention, good insight and good judgment. Additionally, there was no suicidal or homicidal ideation (B2F/2, 4, 6, 13; B5F/2, 4, 9; B6F/2, 4-6). Furthermore, the claimant generally denied any medication side effects (B2 F/1, 3, 5; B5F/1; B6F/6).

(*Id.* at PageID.79). From this evidence, the ALJ concluded Plaintiff had no more than moderate difficulties in understanding, remembering, or applying information. The ALJ therefore found Plaintiff could perform simple and routine tasks with simple, work-related decisions. (*Id.*). In the view of the undersigned, the ALJ drew an accurate and logical bridge between the evidence and the RFC finding. Plaintiff's mental status examinations indeed reveal no more than moderate difficulty in those areas.

The lack of medical opinion evidence here only undermines Plaintiff's application for disability benefits, it does not undermine the ALJ's decision. It was appropriate for the ALJ to proceed to an RFC determination without opinion evidence in this case. The undersigned thus finds no basis to remand this matter.

Lastly, in light of the foregoing, the undersigned need not address the Commissioner's final argument that Plaintiff waived her arguments on appeal by certifying the record was complete.

### G. Conclusion

Plaintiff has the burden of proof on her statements of error. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). Plaintiff has not shown legal error that would upend the ALJ's decision. For all these reasons, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (ECF No. 17), **GRANT** Defendant's motion for summary judgment (ECF No. 18), and **AFFIRM** the Commissioner of Social Security's decision.

## II. PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

*Teachers Loc. 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  November 30, 2021          s/Curtis Ivy, Jr.
                                                                 Curtis Ivy, Jr.
                                                                 United States Magistrate Judge